**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH RIOTTO, and all similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FAY SERVICING, LLC; JOHN DOES I-V,<br><br>Defendant(s). | Case No. 2:22-cv-07458-CCC-AME<br><br>Hon. Claire C. Cecchi<br>Hon. Andre M. Espinosa<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FAY SERVICING LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE CLASS ACTION ALLEGATIONS**

---

**LOCKE LORD LLP**
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10028
Tel: (212) 415-8600
Fax: 212-303-2754
*Attorneys for Defendant Fay Servicing LLC*

On the Brief:

    Joseph N. Froehlich

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 2

    A.    PLAINTIFF FAILS TO PLEAD THAT FAY IS A DEBT COLLECTOR UNDER THE FDCPA ................................................................................. 2

    B.    THE FINAL JUDGMENT SET AN 11.5% INTEREST RATE ON THE OUTSTANDING PRINCIPLE BALANCE ........................................................ 4

    C.    PLAINTIFF FAILS TO ALLEGE THAT THE MORTGAGE STATEMENTS VIOLATE THE FDCPA .............................................................. 7

    D.    PLAINTIFF'S COMPLAINT IS BARRED BY THE ENTRY OF FINAL JUDGMENT ..................................................................................................... 10

CONCLUSION ....................................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antoine v. Carrington Mortg. Servs.*
LLC, No. 0:17-cv-61216-WPD, 2017 WL 3403389 (S.D. Fla. Aug. 8, 2017) ........................8

*Bailey v. Sec. Nat'l Servicing Corp.*,
154 F.3d 384 (7th Cir. 1998) .................................................................................................7

*Brown v. Select Portfolio Servicing, Inc.*,
No. 16-62999-CIV, 2017 WL 1157253 ...............................................................................8

*Gaffney v. Select Portfolio Services, Inc.*
2:18-cv-12233 (D. N.J.) ........................................................................................................7

*Gburek v. Litton Loan Servicing LP*,
614 F.3d 380 (7th Cir. 2010) .................................................................................................8

*In re Gione*
595 B.R. 477 (N.J.B.R. 2019).............................................................................................5, 6

*Gonzalez v. Wilshire Credit Corp.*,
207 N.J. 557, 25 A.3d 1103 (2011).......................................................................................5

*Hill v. DLJ Mortg. Capital, Inc.*,
No. 15-cv-3083 (SJF) (AYS), 2016 WL 5818540 (E.D.N.Y. Oct. 5, 2016) ....................8, 9

*Raciti v. Rushmore Loan Mgmt. Servs., LLC*,
412 F. Supp. 3d 462 (D.N.J. 2019) .....................................................................................3, 4

*Schlegel v. Wells Fargo Bank, NA*,
720 F.3d 1204 (9th Cir. 2013) ..............................................................................................4

*In re Shandar Holding Corp.*,
No. 12-7336 FLW, 2013 WL 3810574 (D.N.J. July 22, 2013) .............................................9

*In re Stendardo*,
991 F.2d 1089 (3d Cir. 1993)................................................................................................6

*Tepper v. Amos Financial, LLC*,
898 F.3d 364 (3d Cir. 2018).................................................................................................3

*Velez-Aguilar v. Sequium Asset Sols. LLC Inc.*,
2023 WL 1793885, No. 22-1109 (3d Cir. 2023) ................................................................10

**Statutes**

15 U.S.C. § 1638(f)...................................................................................................8

FDCPA......................................................................................................... *passim*

N.J. Stat. Ann. § 2A:50–54 (West 2000) ...................................................................6

**Other Authorities**

12 C.F.R. § 1026.41................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

New Jersey R. 4:42-11.................................................................................................1

Rule 12(f) ....................................................................................................................1

Defendant Fay Servicing, LLC ("Fay" or "Defendant") submits this Reply Memorandum of Law in support of: (i) its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and, in the alternative, (ii) its Motion to Strike the Class Action Allegations pursuant to Rule 12(f) ("Motion").[1]

## PRELIMINARY STATEMENT

Plaintiff Joseph Riotto (hereinafter, "Riotto" or "Plaintiff") continues to claim in this putative class action that he was "overcharged" a post-judgment interest rate of 11.5% on three (3) mortgage statements, exceeding the amount permitted by New Jersey R. 4:42-11. Riotto now opposes Defendant's Motion ("Opposition") advancing entirely new theories found nowhere in his Complaint, confusing the express terms of the Final Judgment, fabricating the amounts owed to Fay despite the express amounts awarded in the Final Judgment, and improperly applying the 11.5% mortgage interest rate. Further, Riotto's entire claim rests upon a spurious belief that an FDCPA violation occurred because Riotto received a mortgage statement containing the amounts to reinstate or payoff his loan after a judgment is granted but before the right of redemption expires.

Again, Riotto fails to establish what, if anything, was improper with the Mortgage Statements he received. Instead, Riotto continues to collaterally attack the Final Judgment issued in the Foreclosure Action and now appears to conflate two separate amounts—the Final Judgment award and the full payoff amount—to support a confusing claim that he was overcharged. As set forth in Fay's Motion, it is abundantly clear that the Foreclosure Court's Final Judgment established an outstanding principal sum of $102,467 with interest to accrue at

---

[1] Unless otherwise stated herein, defined terms used in this brief have the same meaning as in the Memorandum of Law in Support of Defendant's Motion to Dismiss, filed March 21, 2023.

11.5% from January 2022 and awarded a Final Judgment for $207,036. Riotto seems to confuse the Final Judgment (which does not include accrued interest, advances, fees) and the amount to pay off his loan.

Even before the Court addresses Plaintiff's claims regarding what was in the statements, the Court should dismiss the Complaint because Plaintiff also fails to explain how any of the facts as plead could possibly support a finding that Fay is a debt collector. Plaintiff appears to assume incorrectly that Fay is a "debt collector" simply because Fay is the servicer of Plaintiff's loan and attorney-in-fact.  Fay is a mortgage loan servicer; Fay is not presumptively a debt collector under the principal purpose test. Accordingly, Plaintiff's FDCPA claim fails entirely.

Finally, it is abundantly clear that Riotto's claims are barred by the *Rooker-Feldman* doctrine when the entire issue presented in Plaintiff's Complaint concerns Plaintiff's objections to the interest rate set forth in the Final Foreclosure Judgment.  Riotto is using the mortgage statements—which clearly provide the amounts to reinstate or payoff his loan—as a renewed attempt to re-litigate the foreclosure Court's Final Judgment. As set forth in Fay's Motion, a Final Judgment was granted after Riotto had a full and fair opportunity to allege the claims asserted herein. Therefore, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

For these reasons, Fay requests that the Court dismiss the Complaint, with prejudice.  If any claims survive this Motion, Fay urges the Court to strike the class action allegations.

## ARGUMENT

### A.   PLAINTIFF FAILS TO PLEAD THAT FAY IS A DEBT COLLECTOR UNDER THE FDCPA

Plaintiff incorrectly claims that Fay "*likely* qualifies as a debt collector under the principal purpose definition and it without question qualifies as a debt collector under the regularly collects definition" because Fay was "hired by the owner of the loan to operate as a

third-party collector and filed affidavits identifying itself as 'the servicer and attorney-in-fact.'" (*See* Opp. pgs. 5-6). Plaintiff's understanding of a 'debt collector' under the FDCPA is entirely misplaced.

While cited in his Opposition, Plaintiff completely ignores the holding in *Tepper v. Amos Financial, LLC* which held that the FDCPA only applies to "debt collectors" and does not apply to all entities who may collect debts as an ancillary part of their activities. *Tepper v. Amos Financial, LLC*, 898 F.3d 364, 365-66 (3d Cir. 2018). "[O]nly those whose principal purpose is the collection of any debts, and those who regularly collect debts owed another, are subject to its proscriptions." *Tepper*, 898 F.3d at 365.

Plaintiff believes that *Tepper* distinguishes the role of "debt buyer" as opposed to a loan servicer when, in fact, *Tepper* does not draw such a fine line. Again, the Third Circuit precedent of *Tepper v. Amos Financial, LLC*, established a "principal purpose" test for determining if an "*entity* whose *principal purpose* of business is the collection of any debts" is a debt collector (emphasis added). Contrary to Plaintiff's claims, the Court in *Tepper* was careful to note that: "whether an entity acquired the debts it collects after they became defaulted does not resolve whether that entity is a debt collector. Instead, we follow the plain text of the statute: an entity whose principal purpose of business is the collection of any debts is a debt collector regardless whether the entity owns the debts it collects." *Tepper v. Amos Fin.*, LLC, 898 F.3d 364 at 371.[2]

Plaintiff again relies upon the "default test" and argues that a debt collector is one who "receives a transfer of rights to collect the debt after the loan goes into default". (*See* Opp. at 6) Even in the context of a mortgage loan servicer, this test was expressly rejected by Judge Wolfson in *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 469 (D.N.J. 2019)

---

[2] Plaintiff's vague allegations that Fay is subject to other FDCPA lawsuits certainly does not establish that he has adequately alleged that Fay is a debt collector.

("Accordingly, the current or defaulted status of an assigned debt on which an entity attempts to collect is of no significance for the purpose of determining whether it qualifies as a debt collector under the FDCPA's 'regularly collects' definition.").   Judge Wolfson dismissed plaintiff's complaint based on the same allegations:

> However, Plaintiffs allege nothing more regarding [the loan servicer's] status as a debt collector than that [it] is "a residential mortgage servicer" and a "debt collector under the FDCPA." …These allegations are plainly insufficient to adequately plead that [the loan servicer] "regularly collects" debts owed to another. *See Green Tree Servicing, LLC v. Cargille* , No. 15-0938, 2019 WL 316750, at *3 (D.N.J. Jan. 24, 2019) (dismissing FDCPA claim against mortgage servicer when plaintiff failed to allege that servicer was not collecting on debt for its own account); *see also  Kurtzman v. Nationstar Mortgage LLC* , 709 Fed.Appx. 655, 659 (11th Cir. 2017) (dismissing FDCPA claim against mortgage servicer when "[t]he complaint is silent regarding whether the principal purpose of [the defendant mortgage loan servicer's] business is collecting debts, and it only generally asserts that 'regularly attempts to collect debts not owed to [it]' ").

*Raciti,* 412 F. Supp. 3d at 468.  Plaintiff makes no further allegations about Fay's business or its principal purpose.  Without such allegations, Plaintiff's claims fail. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208-09 (9th Cir. 2013) ("The complaint fails to provide any factual basis from which we could plausibly infer that the principal purpose of [defendant's] business is debt collection.").

Without pleading facts that show that Fay's "principal purpose" is the collection of debts or that it regularly collects debts owed to another, Plaintiff's claims under the FDCPA fail, and should be dismissed.

### B.   THE FINAL JUDGMENT SET AN 11.5% INTEREST RATE ON THE OUTSTANDING PRINCIPLE BALANCE

The crux of Plaintiff's complaint was that he was improperly charged an 11.5% interest rate on the Mortgage Statements, and after Fay demonstrated that New Jersey law allows the

court to rely upon the contract rate in its final judgement, like it was here, Plaintiff now pivots and claims "[t]he only way Mr. Riotto can assuredly avoid a foreclosure sale of the property post judgment, is *to pay the entire judgment sum including statutory post judgment interest.*" (*See* Opp. pg. 12).[3]  While Plaintiff is accurate in that New Jersey's law of redemption allows him to pay off the amount owed to avoid a foreclosure sale, he misses the mark that the Final Judgment expressly provides that "that Plaintiff is entitled to have the sum of $207,036.55 together with lawful interest at the contract rate of 11.50% on the sum of $102,467.71 from January 12, 2022". (Compl., Ex. A).  The Final Judgment does not limit or end when the 11.5% rate can be charged, and in fact if the foreclosure court were limiting the rate to the date the Final Judgment was signed, that amount would have been known and could have been expressly provided.  Including and applying the contract rate is both common and usual for any contract case.

Plaintiff relies heavily on *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 581, 25 A.3d 1103, 1118 (2011) and *In re Gione* 595 B.R. 477 (N.J.B.R. 2019), in support of the proposition that a mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. However, Plaintiff ignores that the Final Judgment expressly provides an interest at the rate of 11.50% on the principal sum of $102,467.71 from January 12, 2022, which is supported by the terms of the Mortgage. Unlike this matter, *Gonzalez* involved a claim under New Jersey's Consumer Fraud Act, where post-judgment agreements were deemed an "…extension of credit, or a new loan and that [lender's] collection activities may be characterized as subsequent performance in connection with the extension of credit". *Gonzalez v.*

---

[3] Plaintiff appears to confuse the amount awarded in the Final Judgment with what Plaintiff would be required to remit to pay off outstanding amounts owed. Plaintiff's suggestion is that the Final Judgment is independent of the mortgage agreement–which it is not–and that he should only be required to pay 2.25% on the amount awarded in the Final Judgment. This would also be illogical in this foreclosure action where the Mortgage agreement permits reinstatement prior to enforcing the judgment. i.e a foreclosure sale of the propertt. (*See* Froehlich Cert., Exhibit A).

*Wilshire Credit Corp.*, 207 N.J. 557 at 581. Further, *In re Gione*, the Bankruptcy Court found that the foreclosure judgment did not permit an award at the mortgage contract rate. *In re Goione*, 595 B.R. 477 at 482.

Here, the Final Judgment awards 11.5% interest from January 2022, which is contemplated in the parties' Mortgage agreement. (*See* Froehlich Cert., Exhibit A, Mortgage ¶18). Unlike the cases relied upon by Plaintiff, it is also abundantly clear that the Mortgage allows the mortgage interest rate to accrue on the missed monthly mortgage payments until a foreclosure sale because of Riotto's option to reinstate.[4] Further, not only does the Final Judgment correctly account for interest at 11.5% on the principal amount owed, the mortgage permits these amounts to accrue up until Riotto exercises his right under the Mortgage to reinstate.[5]  Plaintiff ignores the express terms of the Final Judgment and providing his own interpretation of the Foreclosure Court's Final Judgment. (Compl., Ex. A).

---

[4] The Third Circuit has held that the "[p]arties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *In re Stendardo*, 991 F.2d 1089, 1094-95 (3d Cir. 1993). Here, Riotto's Mortgage provides that at any time prior to the enforcement of the Final Judgment, he is entitled to reinstate the mortgage by remitting "all sums secured by this mortgage…pays all reasonable expenses incurred by Lender in enforcing the consents and agreements…" (*See* Froehlich Cert., Exhibit A, Mortgage ¶ 18).  It seems peculiar for a borrower to assert, in essence, my servicer violated the FDCPA by offering me an opportunity to save my house through reinstatement.  It would seem the courts should be encouraging servicers to offer reinstatement – not discouraging such conduct.

[5] New Jersey's legislature also declared it "public policy of this State that homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes, and that lenders will be benefited when residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status." N.J. Stat. Ann. § 2A:50–54 (West 2000). Plaintiff's suggestion that he cannot reinstate his loan prior to the foreclosure sale would completely cut against public policy.

### C.   PLAINTIFF FAILS TO ALLEGE THAT THE MORTGAGE STATEMENTS VIOLATE THE FDCPA

Plaintiff devotes several arguments in his memorandum to the notion that Fay seeks to dismiss this action because "the mortgage loan statements do not constitute debt collection communications under the statute" and because "the [mortgage] statements are merely for a purpose of notification rather than collection". (*See* Opp. pp. 6-8).  While this is Fay's argument in part, Fay's position is actually far simpler:  Plaintiff's Complaint is premised on an incorrect belief that he was improperly charged excessive post judgment interest on his mortgage statements when he was not.[6] Further, Plaintiff repeats his allegations that the Final Judgment incorrectly assessed a post-judgment interest and that Fay "overcharged" Plaintiff post-judgment interest at 11.5%. This is also not true.

To the extent that Plaintiff now claims that the Mortgage Statements themselves violate the FDCPA, courts have made clear that not all communications sent to borrowers about a debt are "in connection with the collection of any debt." *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998).  Communications that are informational do not trigger liability. *Id.*  In considering whether a communication is a debt-collection communication, this Court is to make a commonsense inquiry into whether the communication demands payment, the nature of

---

[6] Plaintiff confusingly claims that there is precedent that supports his claim by making a passing reference to the matter of *Gaffney v. Select Portfolio Services, Inc.* 2:18-cv-12233 (D. N.J.). (See Opp. at pp.1-2).  This appears to be another matter handled by Plaintiff's counsel in which a settlement was achieved very early in the matter.  Plaintiff fails to mention that Judge Martinotti explicitly ruled that the Settlement Order "is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Litigation. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption or inference against Defendant or the Released Parties in any proceeding." (*See* Court's Order dated February 14, 2022, Dkt. No. 59 *Gaffney v. Select Portfolio Services, Inc.* 2:18-cv-12233 BRM-MAH (D. N.J.). The fact that another defendant chose to settle another matter is hardly precedent.

the parties' relations, and the objective purpose and context of the communications. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).

The context in which Fay sent the account statement to Riotto establishes that the Mortgage Statements were not sent in connection with the collection of a debt. Fay did not send the account statement to pressure Rioto to pay the outstanding debt. Rather, Fay was ***required*** by TILA and Regulation Z to send the Monthly Statements. 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a)(2).

This case is exactly what occurred in *Hill v. DLJ Mortg. Capital, Inc.*, No. 15-cv-3083 (SJF) (AYS), 2016 WL 5818540, at *9 (E.D.N.Y. Oct. 5, 2016). In *Hill*, the Court dismissed Plaintiff's FDCPA claim because the servicer "was merely sending plaintiff the periodic mortgage statements that it was required to send to her under the TILA and its implementing regulations . . . for informational purposes *while the amounts due under the Foreclosure Judgment remained unsatisfied pending the sale of the Property*; not in connection with an attempt to collect a debt from plaintiff for purposes of the FDCPA") (emphasis added).[7]

---

[7] Courts have recognized that because the periodic account statements are informational only, no FDCPA liability can attach to the sending of those account statements, cease communication request or not. *See Antoine v. Carrington Mortg. Servs*. LLC, No. 0:17-cv-61216-WPD, 2017 WL 3403389, at *2 (S.D. Fla. Aug. 8, 2017) (dismissing FDCPA claim premised on allegedly deceptive account statements be-cause "the monthly mortgage statements did not constitute a 'debt collection' under the FDCPA"); B*rown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV, 2017 WL 1157253, at *2 (S.D. Fla. Mar. 24, 2017) (citing 12 C.F.R. § 1026.41) ("Defendant is required by federal law, specifically [TILA] Regulation Z to send mortgage statements to plaintiff. Plaintiff cannot state a claim under the FDCPA with respect to monthly mortgage statements sent pursuant to federal law."); *see also id.* at n.5 ("If a mortgage servicer is not liable under the FDCPA for sending monthly mortgage statements pursuant to TILA Regulation Z, even after the consumer requested that it cease communications, then there is no basis for imposing FDCPA liability upon a servicer for complying with Regulation Z absent a 'cease communication' notice from the borrower.").

Here, Fay sent Riotto Mortgage Statements because it was mandated to do so by 12 C.F.R. § 1026.41.   Those Mortgage Statements are strictly informational and are thus not actionable under the FDCPA.

There is also no support for Plaintiff's claim that Fay is "not entitled to 'charge' any fees under the contract to be itemized on loan statements" just because there is a Final Judgment. New Jersey law clearly allows a foreclosure plaintiff to amend the judgment to include later incurred fees. *See In re Shandar Holding Corp.*, No. 12-7336 FLW, 2013 WL 3810574, at *5 (D.N.J. July 22, 2013) (holding that an amended judgment includes interest, fees, and commission to allow "a foreclosing mortgagee who obtains an order to pay additional sums can be made 'whole' for its post-foreclosure expenses").   It also appears that Plaintiff believes that once Final Judgment was entered, Fay was no longer obligated to comply with Federal Law. Indeed, Fay was required to send the informational statements "while the amounts due under the Foreclosure Judgment remain unsatisfied pending the sale of the Property." *See Hill*, 2016 5818540 at *9.  In this instance, Plaintiff pleads that Fay received a Final Foreclosure Judgment regarding the property" (Compl. ¶ 18, Ex. A). However, Plaintiff does do not plead that there was a foreclosure sale that passed title of the property to any other party. Indeed, a foreclosure sale has not taken place and Fay is permitted to collect what is permitted under the Final Judgment.

It is also abundantly clear that Plaintiff is now attempting to confuse the Final Judgment and the amount due to reinstate or pay off the loan.  Plaintiff's attempt at a vague FDPCA violation because Fay provided Mortgage Statements with a payoff amount is simply a

distraction. Further, Plaintiff's Complaint is devoid of any allegations as to an improper pay off amount. [8]

### D.   PLAINTIFF'S COMPLAINT IS BARRED BY THE ENTRY OF FINAL JUDGMENT

As set forth in Fay's Motion, the foreclosure Court's Final Judgment should end this Court's inquiry into all of Plaintiff's claims. (Compl., Ex. A). However, Riotto continues to insist that upon the entry of final judgment, Fay is "not entitled to charge any fees under the contract to be itemized on loan statements" and that Fay's "debt collection communications in the form of mortgage loan statements, contained false, deceptive and/or misleading representations".

Plaintiff's claims based on the faulty premise that ultimately seek to disregard the Final Judgment are barred upon the Final Judgment of foreclosure and are barred by the *Rooker-Feldman* Doctrine. Despite Plaintiff's insistence that his claims concern the Mortgage Statements, Plaintiff is simply seeking to collaterally attack the express terms of the Final Judgment – namely the 11.5% interest rate. It is indisputable that: (1) a final judgment in the

---

[8] Plaintiff now offers a new argument that there is "an additional $38,000" on the statements and that the "math does not add up". First, the Court should reject this new claim that was not pled in the Complaint. However, even if the Court accepts Plaintiff's new argument, the math does add up. The "Accelerated Amount Due" of $245,089 (*see* Compl., Ex. C) is composed of: $102,468 (the principal balance owed); $104,569 (default per diem interest at $32.28 from 3/1/2013-1/11/2022 – which accrues from 1/12/2022 under the Final Judgment); $8,652 (268 days of default per diem interest at $32.28 from 1/12/2022-10/7/2022); $29,400 (Total late fees and recoverable advances). Plaintiff fails to recognize that the interest runs all the way from the January 12, 2022 date specifically mentioned in the judgment, and also fails to recognize the fees and advances that are specifically laid out in in the statement. To the extent that Plaintiff is complaining that fees and advances are not broken down, the Third Circuit recently held that is not required. *See Velez-Aguilar v. Sequium Asset Sols. LLC Inc.,* 2023 WL 1793885, at *3, No. 22-1109 (3d Cir. 2023) ("nothing in the statutory text requires a debt collector to itemize the debt being collected… the statute requires only that the debt collector's notice to the consumer contain, inter alia, 'the amount of the debt,' the 'character, amount, or legal status' of which is not falsely represented. ..[t]he 'amount of the debt,' then, indicates the total, aggregate, sum, or quantity of money that the consumer is obligated to pay, including an amount that may include both the principal and interest thereon…").

Foreclosure Action was issued; (2) Plaintiff complains of injuries caused by the Final Judgment, with the crux of the Complaint being that the Final Judgment in the Foreclosure Action was improper because of the award of interest at a rate of 11.5% in the judgment; (3) Plaintiff is asking this Court to review the state court's Final Judgment by holding that the post-judgment interest of 11.5% was improper; and (4) the state court judgment was first entered well before Plaintiff commenced this action.

Plaintiff's claims regarding the Mortgage Statements are red herring because, as noted above, there is nothing improper with the Mortgage Statements which are ***required*** by TILA and Regulation Z.  Plaintiff's Opposition only further demonstrates that his Complaint is barred because he seeks to also complain about the amounts owed under the Final Judgment. Ultimately, it is clear from the face of the Complaint that the source of Plaintiff's alleged injury is the Foreclosure Judgment annexed as the first document to his Complaint. Indeed, there can be little doubt that Plaintiff would not have filed this action but for the state court Final Judgment that awarded 11.5%, as the crux of the Complaint is that the Final Judgment is improper because it awarded 11.5% interest from January 2022. *See, e.g.,* Compl. ¶¶ 19, 22. This Court does not have jurisdiction to make those determinations and hold that the interest rate in the Judgement was wrong. Accordingly, this Court must dismiss the Complaint pursuant to the *Rooker-Feldman* Doctrine because this Court cannot conduct an appellate-like review over the state court rulings.

Here, there was (and still is pending) a foreclosure action where a Final Judgment was granted. Thus, the Plaintiff's claims should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court enter an Order granting its motion to dismiss the Complaint in its entirety, or in the alternative, striking the class action allegations.

Dated:  May 8, 2023                  Respectfully submitted,

                                        /s/*Joseph N. Froehlich*
                                        Joseph N. Froehlich
                                        LOCKE LORD LLP
                                        Brookfield Place
                                        200 Vesey Street, 20th Floor
                                        New York, NY 10281
                                        Tel: (973)-520-2384
                                        Fax: (855)-595-1186
                                        jfroehlich @lockelord.com

                                        *Attorneys for Defendant Fay Servicing LLC*

12

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 8, 2023, I electronically filed the foregoing with the clerk of the Court by using the Court's CM/ECF system, and accordingly served all parties who receive notice of the filing via the Court's CM/ECF system.

<i>s/ Joseph N. Froehlich</i>
<br>
Joseph N. Froehlich