UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Joseph Riotto, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Fay Servicing, LLC,<br><br>*Defendant*. | Civil Action No. 22-7458(MEF)(AME)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
    A.   **Allegations**
        1.   **The Loan and the State Court Action**
        2.   **Collection**
    B.   **This Case**
    C.   **The Motion**
    D.   **The Court's Approach**
II.  **Rooker-Feldman**
    A.   **In General**
    B.   **In This Case**
III. **Preclusion**
IV.  **FDCPA**
V.   **Conclusion**

\*   \*   \*

A borrower defaulted on a loan, and the lender hired a company to try to collect.

The borrower sued the collection company, alleging it violated a federal statute by making misleading statements about what the borrower owed.

The company has now moved to dismiss.

The motion is granted, without prejudice.

                         \*    \*    \*

**I.   Background**

    **A.   Allegations**

        **1.   The Loan and the State Court Action**

In 2006, a lender made a loan to Joseph Riotto. See Complaint ¶ 6. The loan was secured by a mortgage on his property. See id. at ¶ 8.

Riotto defaulted on the loan. See id. at ¶ 10.

The lender then sued Riotto in state court for the money it was owed.[1] See id. at ¶ 16.

The state court entered judgment for the lender, against Riotto. See Exhibit A at 1-2. The state court judgment did three main things. First, it ordered the property sold. See Exhibit A at 2. Second, it ordered the proceeds of the sale to be used to repay the debt. See id. And third, it ordered certain interest payments. See id. at 1.

        **2.   Collection**

Soon after the state court judgement was entered, a loan-servicing company, hired by the lender, sent several "mortgage statement[s]" to Riotto. See Complaint ¶¶ 12, 24-26; Exhibits C-E.

The mortgage statements (from here, the "Collection Statements") included information about what Riotto was said to owe the lender under the state court judgment. See Exhibits C-E.

---

[1] Joseph Riotto and Sandra A. Riotto were said to be jointly and severally liable for the loan. See Exhibit A at 1. Sandra Riotto is not a party to this case.

The Collection Statements said Riotto owed, among other things: attorneys' fees and "litigation costs,"[2] Complaint ¶ 29-30; Exhibit C at 1; Exhibit B at 1, and certain interest payments. See Complaint ¶¶ 24-26.

### B. This Case

Riotto then filed this suit in federal court.  From here, he is referred to as "the Plaintiff."

The Plaintiff's lawsuit alleges that efforts of the loan servicing company (from here, "the Defendant"[3]) to collect on the state court judgment violated the Fair Debt Collection Practices Act ("FDCPA"), because the Collection Statements were allegedly inaccurate.  See id. at ¶¶ 52-53, 60, 65.  The state court judgment, the Plaintiff alleges, did not in fact authorize collection of attorneys' fees or litigation costs, and it did not authorize collection of interest at a certain rate over the full period of time suggested by the Collection Statements.  See id. at ¶¶ 29-30, 55; Brief in Opposition at 3, 5, 10; June 7 Letter (Docket Entry 30) at 3.[4]

The Collection Statements' allegedly inaccurate characterization of the debt owed under the state court judgment is said to have violated the FDCPA because, among other things, the statute prohibits certain false statements as to "the . . . amount . . . of [a] debt."  15 U.S.C. § 1692e(2)(A).

### C. The Motion

The Defendant has moved to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure.

The motion is now before the Court.

### D. The Court's Approach

The Court first considers the Defendant's threshold arguments for dismissing the complaint without getting to its merits.

---

[2]  The Complaint refers to these collectively, as "corporate advances."  See Complaint ¶¶ 30-31.

[3]  The Defendant is Fay Servicing, LLC.

[4]  The Plaintiff also makes another argument.  It is not considered here.  See footnote 11.

3

The first of these: the Court lacks jurisdiction under the Rooker-Feldman doctrine. This argument is not persuasive, for the reasons taken up in Part II.

The second threshold argument: the Plaintiff's claims are precluded, because they should have been pressed in the state court action. This argument is also not persuasive, as set out in Part III.

Turning to the merits, the Court concludes that the complaint must be dismissed because the Plaintiff has not properly pled what it must --- that the Defendant is a debt collector, as defined by the FDCPA. See Part IV.

## II. Rooker-Feldman

Take first the Defendant's argument that this Court has no jurisdiction under the Rooker-Feldman doctrine. See Motion to Dismiss at 15.

### A. In General

The doctrine is named for the cases that set it out, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Its core purpose: to prevent federal district courts from exercising "appellate jurisdiction to reverse or modify a state-court judgement." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).

Doing this would be doubly improper. First, federal district courts cannot generally hear appeals --- because they "are empowered to exercise original, not appellate, jurisdiction." Id. And second, federal district courts cannot generally hear appeals from state courts --- because, under the certiorari statute, that sort of review is the United States Supreme Court's prerogative. See id.

The doctrine applies when four requirements are met. See Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3d Cir. 2010).

The four requirements: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Id. at 166 (cleaned up).

4

### B. <u>In This Case</u>

The boxes set out just above are not checked here.

To see why, start with the second requirement for triggering the <u>Rooker-Feldman</u> doctrine.

An injury is not "caused by [a] state-court judgment," <u>id</u>., as it must be under the second requirement, if it instead flows from a "third party's actions." <u>Id</u>. at 167-68.

That is the case here.[5]

The Plaintiff is not alleging that the state court judgment harmed him by erroneously authorizing the collection of attorneys' fees, litigation costs, and certain interest. Rather, the Plaintiff is alleging that the Defendant harmed him --- by erroneously pushing out beyond the state court judgment, and trying to collect attorneys' fees, litigation costs, and certain interest.

Turn now to the fourth requirement for triggering the <u>Rooker-Feldman</u> doctrine.

A plaintiff does not "invit[e] the district court to review and reject" a state court judgment, <u>id</u>. at 166, when the plaintiff asks the district court to "review" the state judgment --- but only so as to ensure someone is following it, not with any suggestion of the federal court "reject[ing]" it.

Again, that is this case.[6]

"[R]eject[ing]" the state court judgment, <u>id</u>., is not what the Plaintiff is seeking here. The Plaintiff's FDCPA claims are that the Collection Statements did not accurately "represent[]," 15 U.S.C. § 1692e(1), what the underlying state court judgment authorized, not what it properly might have authorized. See Complaint ¶¶ 29-30, 55; Brief in Opposition at 3, 5, 10; June 7 Letter at 3.

Assessing this argument will inevitably require a "review" of the judgment --- an interpretation of it, to see what it did and did not authorize. But faithfully interpreting a legal document is not to "reject" its authority. Quite the opposite. It is to respect its authority, by treating it as a given and trying to implement it.

---

[5] But look to footnote 11.

[6] As before, see footnote 11.

5

There is, in short, all the difference for Rooker-Feldman purposes between (a) a legal theory that requires the federal district court to discern what a state court judgment meant (did it authorize attorneys' fees?) and (b) a legal theory that asks the federal district court to undo the state court judgment (it authorized attorneys' fees --- but that was an error, now to be fixed). See generally Cuevas v. Wells Fargo Bank, N.A., 643 F. App'x 124, 126 (3d Cir. 2016); Moncrief v. Chase Manhattan Mortg. Corp., 275 F. App'x 149, 153 (3d Cir. 2008); Schmidt v. Fein, Such, Kahn, & Shepard, P.C., 2018 WL 4144685, at *3 (D.N.J. Aug. 30, 2018).

The Plaintiff's allegations fall into category (a).

Being asked, as here, to simply determine what a state court judgment means --- that passes muster under Rooker-Feldman. Making such a determination does not purport to place the federal district court over the state court, as an error-correcting appellate tribunal would situate itself. Rather, it treats the state court judgment as a fixed star --- to be seen by the federal court as clearly and accurately as possible, but with no suggestion of trying to alter it or blot it out. See generally In re Phila. Ent. & Dev. Partners, 879 F.3d 492, 500 (3d Cir. 2018) (noting that for Rooker-Feldman purposes, a district court engages in "prohibited appellate review" when it engages in "a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law").

Bottom line: Rooker-Feldman does not apply to the claims considered here, see footnote 11, because two of the four requirements for its application are not met.

This conclusion is consistent with decisions of courts from around the country. See Panzarella v. Marcus & Hoffman, P.C., 2024 WL 1219961, at *2 (E.D. Pa. Mar. 21, 2024) (Rooker-Feldman "does not apply when the alleged injury stems from a debt collector's collection practices, rather than an underlying state court judgment"); Ahmed v. W. Coast Servicing Inc., 541 F. Supp. 3d 563, 573 (E.D. Pa. May 24, 2021) ("The Rooker-Feldman doctrine does not apply to bar claims where the alleged injury stems from collection practices used by debt collectors rather than from state court judgments."); Hines v. HSBC Bank USA, 2016 WL 5716749, at *5 (E.D.N.Y. Sept. 30, 2016) ("the collection-related claims allege injuries caused not by the state court judgment itself but by defendants' alleged misconduct in attempting to collect under that judgment"); see also Doyle v. Trans Union, Del., 638 F. App'x 559, 560 (8th Cir. 2016) (holding that the plaintiff's FDCPA claim did "not attack

6

the underlying state court judgments, so it is not barred by the Rooker-Feldman doctrine").

### III. Preclusion

Next, the Defendant argues that the Plaintiff's claims are precluded. See Motion to Dismiss at 17-21; May 28 Letter (Docket Entry 29) at 1-3.

To assess this argument, the Court looks to the law of the state where the judgment that assertedly has preclusive effect was entered. See, e.g., Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 375 (1985) (so holding); Sec'y U.S. Dep't of Lab. v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017) (same).

Here, the relevant body of preclusion law is New Jersey's --- because the judgement in question was entered by a New Jersey state court under New Jersey law. See Exhibit A at 1; see generally Howard v. Wells Fargo Bank, N.A., 2024 WL 2044622, at *2 (D.N.J. May 8, 2024).

In interpreting New Jersey preclusion law, this Court must apply the law as the New Jersey Supreme Court has laid it out. See Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010); Howard, 2024 WL 2044622, at *2.

And the New Jersey Supreme Court has made clear: "if . . . a claim could not have been presented in the first action, then it will not be precluded in a later action." Watkins v. Resort Int'l Hotel & Casino, Inc., 124 N.J. 398, 413 (1991).

That is dispositive.

The claims here, see footnote 11, "could not have been presented" in the state court action because they had not yet materialized.

After all, the Plaintiff's core allegation is that after the state court judgment was entered, the Defendant misrepresented its content by trying to collect funds that were not authorized by the judgment. See Complaint ¶¶ 29-30, 55; Brief in Opposition at 3, 5, 10; June 7 Letter at 3.

But how could the Plaintiff have known this was coming, such that he should have "presented" his current claim to the state court?[7] And even if foreseen, the claim could only have been

---

[7] See Velez-Aguilar v. Sequium Asset Sol., LLC, Inc., 2022 WL 18635633, at *6 (D.N.J. Jan. 18, 2022) (holding the plaintiff's FDCPA claim was not barred by an earlier collection action when "[p]laintiff's FDCPA claim of false and misleading disclosures

7

that the judgment (yet to be entered) would (later yet) be misrepresented. But how could a speculative and unripe claim of this sort have been even potentially viable?

The Defendant does not take on these questions, and without doing so it cannot carry its burden of establishing preclusion. See generally State v. Kelly, 201 N.J. 471, 487 (2010) (noting the burden is on the party asserting preclusion); Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005) (same).

At bottom, the state court case addressed one issue (the Plaintiff's debt to the lender) and this case addresses another (the Defendant's allegedly unlawful collection efforts). The cases do not seek "to remedy [the same] wrong." McNeil v. Legislative Apportionment Comm'n of State, 177 N.J. 364, 395 (2003); Howard, 2024 WL 2044622, at *4-5. They focus on different wrongs, and the state court action therefore does not bar this one. See McNeil, 177 N.J. at 395; Howard, 2024 WL 2044622, at *4-5.

Federal courts applying New Jersey law have routinely come to this conclusion. See Begum v. Harrison, 2021 WL 1748102, at *2 (D.N.J. May 2, 2021) ("At bottom, the state-court action was about the debt itself, whereas th[is] federal-court action [is] about efforts to collect the debt."); Tobing v. Parker McCay, P.A., 2018 WL 2002799, at *8 (D.N.J. Apr. 30, 2018) (holding FDCPA claim was not barred by claim preclusion because "this suit was not based on the same cause of action as the Foreclosure Action, which determined whether [p]laintiffs fulfilled their obligations under the Mortgage contract and default on their obligations. In this case, [p]laintiffs seek damages based on alleged FDCPA . . . violations."); cf. Hochberg v. Lenox, Socey, Formidoni, Giodarno, Cooley, Lang & Casey, P.C., 2017 WL 1102637, at *5 (D.N.J. Mar. 24, 2017) (holding the entire controversy doctrine did not bar the plaintiff's FDCPA claim because the prior case arose from a "completely independent transaction[]" --- the plaintiff's failure to pay the underlying debt, and the FDCPA claim arose from the defendants' "alleged use of false and misleading statements" to try to collect the debt).

And so have federal courts applying the law of other states. See Jones v. LVNV Funding, LLC, 2016 WL 3940310, at *3 (E.D. Pa. July 20, 2016) ("Because [the plaintiff's] claims arise from the

---

did not even arise until CACH issued the Collection Letter on March 24, 2021. Clearly, [p]laintiff could not have raised his FDCPA claims in the earlier 2009 Collection Action."); cf. Tobing, 2018 WL 2002799, at *8.

8

[d]efendants' alleged misconduct in the debt collection process rather than the debt itself, they do not stem from the same 'transaction or occurrence' as the Collection Lawsuit.") (applying Pennsylvania law); Deitemyer v. Ryback, 2019 WL 3587883, at *10 (D. Md. Aug. 6, 2019) (holding that an FDCPA claim was not barred by claim preclusion because when an FDCPA "claim concerns collection activities," it "does not arise out of the transaction creating the debt") (applying Maryland Law); Garcia v. Jenkins/Babb LLP, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012) report and recommendation adopted 2012 WL 3846539 (holding claim preclusion did not apply because the "nucleus of operative facts in the underlying state court case involves [p]laintiffs' failure to pay a loan. The nucleus of operative facts for the FDCPA claim involves the subsequent conduct of the defendants in trying to collect on the loan.") (applying Texas law).

In short: the Plaintiff's claims considered here, see footnote 11, are not barred.[8]

## IV. FDCPA

Next, the Defendant argues that the Plaintiff's FDCPA claims must be dismissed, because the Plaintiff has not adequately alleged that the Defendant is a debt collector. See Motion to Dismiss at 11.

This argument is persuasive.

"To state a claim under the FDCPA, a plaintiff must allege that . . . the defendant is a debt collector," as defined by the FDCPA. Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 280 (3d Cir. 2018) (quoting Tatis v. Allied Interstate, LLC, 882 F.3d 422, 427 (3d Cir. 2018)).

---

[8] The Defendant also argues that the Plaintiff's claims are barred by New Jersey's entire controversy doctrine. See Motion to Dismiss at 18-21. The doctrine is "an extremely robust claim preclusion device." Chavez v. Dole, 836 F.3d 205, 228 n.130 (3d Cir. 2016) (cleaned up). But like claim preclusion, the entire controversy doctrine "does not apply to [claims that were] unknown or unaccrued" at the time of the prior case. Wadeer v. N.J. Mfr. Ins. Co., 220 N.J. 591, 606 (2015). Therefore, the entire controversy doctrine is not a roadblock for the Plaintiff here, for the reasons described in the text. Other courts have so held, too. See Tobing, 2018 WL 2002799, at *7; Velez-Aguilar, 2022 WL 18635633, at *6.

Per the statute, one definition of a debt collector is "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).[9]

To plead the Defendant is a debt collector, the complaint alleges that the Defendant "regularly collects or attempts to collect debts owed or due to another," is a "debt collector as defined by the FDCPA 15 U.S.C. § 1692a(6)," and "uses the mail, telephone and/or facsimile in the operation of its business, the principal purpose of which is the collection of debts." Complaint ¶¶ 13-15.

But these are not factual allegations. They are a copy-and-paste from the statute, and "[m]ere restatements of the elements of a claim" are insufficient to satisfy a plaintiff's pleading obligations. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) (cleaned up); see generally Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also Rajpurohit v. Becton, Dickinson, & Co., 2024 WL 1477652, at *7 n.15 (D.N.J. Apr. 5, 2024).

And courts have routinely held that allegations such as these are not enough to state an FDCPA claim. See Estate of Coles v. Zucker, Goldberg, & Ackerman, 658 F. App'x 108, 111 (3d Cir. 2016) (holding that the allegation --- which the Court here pulls from the amended complaint --- that the defendant "is a debt collector law firm as defined by FDCPA at Section 1692a(6) which states that 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another'" was insufficient); Kurtzman v. Nationstar Mortg. LLC, 709 F. App'x 655, 659 (11th Cir. 2017) (holding the plaintiff had not adequately pled the defendant was a debt collector when the plaintiff "assert[ed] that [the defendant] 'regularly

---

[9] The Defendant argues that the Plaintiff must plead that the Defendant's "principal purpose" was to be a debt collector. See Motion to Dismiss at 11-12. But given that the Defendant is alleged to have been working to collect a debt on behalf of someone else, this argument runs aground on the caselaw. See Henson v. Santander Consumer USA Inc., 582 U.S. 79, 82-83 (2017); Tepper v. Amos Fin., LLC, 898 F.3d 364, 367-68 (3d Cir. 2018); Beard v. Ocwen Loan Servicing, LLC, 2018 WL 638455, at *5 (M.D. Pa. Jan. 31, 2018).

10

attempts to collect debts not owed to [it].'  This is a conclusory, formulaic recitation of the statutory language, and we need not assume it is true."); Raciti v. Rushmore Loan Mgmt. Servs., LLC, 2020 WL 13816459, at *3 (D.N.J. May 7, 2020) ("Plaintiffs' allegation that '[i]t is [d]efendant's business model to regularly collect payments on accounts that are owed to another entity' is conclusory and merely parrots the statutory definition of a 'debt collector.'"); Carter v. Tacony Crossing 2021 LLC, 2023 WL 2920280, at *4 (E.D. Pa. Apr. 12, 2023) (holding "conclusory allegations that restate the statutory definitions" such as "[d]efendants are debt collectors because they generally 'do business in connection with debt collection,' [and] 'collect debts'" were "not sufficient to establish that [d]efendants are debt collectors"); Taggart v. Deutsche Bank Nat'l Tr. Co., 2021 WL 2255875, at *9 (E.D. Pa. June 3, 2021) (alleging the defendant "regularly engages in the collection of debt and is a 'Debt Collector' as defined under 1692(a) of the FDCPA" was "insufficient to establish that [the defendant] is a debt collector"); Gromms v. Discover Fin. Serv., 2021 WL 6072809, at *4 (E.D. Pa. Dec. 22, 2021) (allegations were insufficient when they were "based on restatements of the statutory language rather than on facts from which one could plausibly infer" the defendant was a debt collector); El-Bakara v. Weltman, Weingberg & Reis Co., LPA, 2019 WL 1258830, at *2 (E.D. Pa. March 19, 2019) ("Quoting the relevant statutory definition [of a debt collector] is not sufficient[.]").

The Plaintiff's main response is to cite four cases in which the Defendant here was said to have been "deemed covered by" the FDCPA.  See Brief in Opposition at 7 n.1.  But the relevant issue was not addressed in three of the cases.  See Lamirand v. Fay Servicing, LLC, 38 F.4th 976 (11th Cir. 2022); Parente v. Fay Servicing, LLC, 2020 WL 1182714 (N.D. Ill. Mar. 12, 2020); Meyer v. Fay Servicing, LLC, 385 F. Supp. 3d 1235 (M.D. Fla. 2019).  And "it is universally recognized that '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'"  Com. of Pa. v. Brown, 373 F.2d 771, 784 (3d Cir. 1967) (quoting Webster v. Fall, 266 U.S. 507, 511 (1925)).  The remaining case put forward by the Plaintiff addressed the relevant issue only briefly --- in one sentence, without citations --- and stated the parties did not dispute that the Defendant was a debt collector.  See Odsather v. Fay Servicing, LLC, 2018 WL 6696688, at *3 n.4 (W.D. Wash. Dec. 20, 2018).  That does not move the needle.

11

In short: the Plaintiff has not adequately alleged that the Defendant is a debt collector. As this is an essential element of an FDCPA claim, the complaint fails to state a claim and it is dismissed.[10]

## V.  Conclusion

In light of the above, the complaint is dismissed.[11] This is without prejudice. The Plaintiff may file a new complaint, within 45 days.

---

[10] Note that in a different portion of his brief, the Plaintiff indicates that the Collection Statements say: "[t]his communication is from a debt collector." Exhibit C at 2; Brief in Opposition at 8. The Plaintiff does not contend that this self-description supports the allegation that the Defendant is a debt collection. See Brief in Opposition at 5-7; June 7 Letter at 5. Because the Plaintiff does not make this argument, the Court does not take it up. See generally, e.g., Wu v. GSX Techedu Inc., 2024 WL 3163219, at *25 (D.N.J. June 25, 2024); Church v. Collection Bureau of Hudson Valley, Inc., 2023 WL 8185669, at *8 n.15 (D.N.J. Nov. 27, 2023). But note that self-descriptions of this kind might not bear much weight in the analysis. See Raciti, 2020 WL 13816459, at *4; Green Tree Servicing, LLC v. Cargille, 2019 WL 316750, at *3-4 (D.N.J. Jan. 24, 2019); Barbato v. Greystone All., LLC, 2017 WL 1193731, at *16 (M.D. Pa. Mar. 30, 2017) (collecting cases); Slimm v. Bank of Am. Corp., 2013 WL 1867035, at *5 (D.N.J. May 2, 2013).

[11] Two points before concluding. First, the sole focus of this Opinion, for both Part II and Part III, has been the three arguments pressed by the Plaintiff that are sketched out above in Part I.A.2 and Part I.B. But there are places where the Plaintiff presses another argument --- and this argument would seem to veer closer to requiring the Court to address whether the state court properly or improperly set the interest rate in the judgment. See Brief in Opposition at 9 (seeming to argue that the state court was not permitted to set an 11.5% interest rate). This argument presents different Rooker-Feldman considerations than the three arguments considered here. See Meyers v. Caliber Home Loans, Seterus, Inc., 2019 WL 4393377, at *6-7 (M.D. Pa. Sept. 13, 2019); Minton v. Cach, LLC, 2014 WL 4764183, at *3 (E.D. Pa. Sept. 25, 2014). But the closer-to-the-line argument does not need to be taken up now. This is because there are at least some allegations, as discussed in Part II, that clear the Rooker-Feldman hurdle. But once that

12

IT IS on this 17th day of July, 2024, so **ORDERED**.

                                                  Michael E. Farbiarz, U.S.D.J.

---

threshold hurdle is cleared --- it becomes apparent that the complaint must be dismissed, as described in Part IV. Bottom line: if the complaint is re-filed, and the FDCPA debt collector issue melts away, see Part IV --- there may then be additional Rooker-Feldman and/or preclusion issues to take up. A second point. The state court judgment may or may not authorize attorneys' fees, litigation costs, or certain interest payments throughout a particular period. See Part I.A.2, Part I.B. Because the Plaintiff has not adequately alleged that the Defendant is a debt collector, and the complaint is dismissed on that basis, the Court does not address the question of what the state court judgment authorizes as to those three matters (or, for that matter, whether the "Collection Statements" here were in fact attempts to collect).